Janice L. LAUSCH, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 31, 1996.

Decided July 17, 1996.

Reargument Denied Aug. 27, 1996.

---

Christian Earl Eaby, for Petitioner.

Randall S. Brandes, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for Respondent.

Before PELLEGRINI and KELLEY, JJ., and NARICK, Senior Judge.

KELLEY, Judge.

Janice L. Lausch (claimant) appeals from an order of the Unemployment Compensation Board of Review which affirmed the referee's decision denying benefits to claimant pursuant to section 402(e) of the Pennsylvania Unemployment Compensation Law (Law).[1] Also before this court for disposition is the board's motion to strike claimant's reply brief to an amicus curiae brief filed on behalf of Tyson Foods, Inc. (employer).[2]

The findings of fact, as made by the referee and adopted by the board,[3] are as follows:

1. The claimant was last employed for approximately sixteen years with Tyson Foods as a full-time paw inspector earning $7.75 per hour and her last day of work was June 14, 1995.

2. In or about April, 1995, the claimant complained about smoke and irritants in her work area and the claimant provided the employer with a letter from her doctor indicating the nature of her medical problem and recommendations for her working conditions.

3. On May 8, 1995, the claimant was assigned to work in the paw department[4] which was an area where the air quality was better than the claimant's previous work area and which was consistent with the recommendations of the claimant's doctor.

4. The claimant notified the employer the work she was performing caused soreness in her shoulder and arm; the employer provided the claimant with a list of doctors from which to choose a doctor for an office visit to evaluate her medical problem.

5. Although Dr. McGee was on the list of doctors and the claimant desired to visit Dr. McGee, the employer notified the claimant Dr. McGee was on vacation at that time; the employer did not refuse to allow the claimant to visit Dr. McGee.

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). Section 402(e) states that an employee shall be ineligible for compensation for any week in which her unemployment is due to her discharge or temporary suspension from work for willful misconduct connected with her work.

2. By order of May 22, 1996, this court directed that the board's motion to strike be considered along with the merits of claimant's petition for review.

3. Upon consideration of the entire record, the board affirmed the referee's decision without making any independent findings of fact.

4. Claimant's job in the paw department entailed the removal of skin and claws from chicken parts.

6. The claimant selected Dr. Zartman and on June 13, 1995, the claimant visited the Doctor.

7. Dr. Zartman recommended the claimant return to work on June 14, 1995, provided she wear splints, not carry or lift more than 15 lbs. with her right hand and lift with right palm facing up; the Doctor did not restrict the claimant from performing repetitive motion-type work.

8. On June 14, 1995, after receiving notification of the claimant's work restrictions, the employer determined the claimant's assignment in the paw department was consistent with her work restrictions and the claimant continued to be assigned this work.

9. On June 14, 1995, the employer requested the claimant visit Dr. McGee for an evaluation of her medical problem on June 15, or June 16, 1995, but the claimant refused to see this Doctor.

10. On June 15, 1995, the claimant was absent from work apparently due to soreness in her arm and shoulder and the claimant notified the employer of her absence.

11. On June 16, 1995, the claimant provided a letter to the employer indicating the working conditions were adversely affecting her medical problems and that she would not be returning to work until after she visited Dr. Hughes on June 20, 1995, and Dr. Kaufman on June 21, 1995.

12. Dr. Hughes had treated the claimant for a medical problem in 1993 and Dr. Kaufman had been treating the claimant for asthma.

13. On June 16, 1995, when the claimant arrived at the work place with the letter, the claimant was advised by the employer's superintendent to remain at work and speak with management in the Human Resources Department but the claimant left the work place without making such a contact.

14. On June 19, 1995, the employer notified the claimant she had been off work three days without medical excuse, that work was available within her restrictions and indicated that her continued absence from work without a medical excuse and without applying for a medical leave of absence could result in disciplinary action; the employer also advised the claimant she was scheduled for a doctor's appointment on June 20, 1995, with Dr. McGee, to be evaluated for an alleged shoulder injury.

15. On or about June 20, 1995, the claimant notified the employer via her attorney that she would not attend the appointment scheduled with Dr. McGee.

16. During the period from June 16, to June 23, 1995, the claimant remained absent from work and the claimant had no personal direct contact with the employer; the claimant did not make herself available for any work and the employer did not offer the claimant any work other than the paw department assignment.

17. The claimant was aware the employer had a light-duty work program by which the employer made accommodations to allow employes to continue working with almost any medical restrictions caused by a work-related injury.

18. The documentation the claimant provided to the employer on June 14, 1995, indicated the claimant's medical problem with her right arm was a work-related injury.

19. The employer's attendance policy provides for the charging of 10 points for each day of absence from work; absences are excused and not charged for reasons including repeat visits for continued medical conditions, approved leave of absence and work-

related injuries provided proper documentation is provided to the employer.

20. The claimant was aware of the employer's attendance policy.

21. The employer offers leaves of absence in certain situations and the claimant was aware that such leaves of absence may be available if requested by the employe.

22. The claimant did not request a leave of absence.

23. As of June 14, 1995, the claimant had only 25 points remaining under the employer's attendance program.

24. The employer's attendance program provides for the termination of an employe where the employe's point level drops below 1 point unless the absence is related to a medical problem and proper documentation is provided to the employer.

25. On June 23, 1995, the claimant was discharged from employment due to her inattendance at work and failure to provide proper documentation indicating her absence was related to a medical problem.

26. During the period from June 25 to August 12, 1995, the claimant was able to perform clerical work and the claimant was seeking such work.

Claimant applied for unemployment compensation benefits and the Lancaster Job Center (Job Center) issued a determination approving benefits under sections 402(b)[5] and 401(d)(1)[6] of the Law but disapproving benefits under section 402(e) of the Law. Claimant appealed the Job Center's determination to a referee.

After a hearing, the referee affirmed the Job Center's determination concluding that claimant's discharge from employment resulted from her willful misconduct as contemplated by section 402(e) of the Law. The referee determined that the record indicated that: (1) claimant was absent from work; (2) claimant did not provide the proper documentation to justify her absence; and (3) claimant's termination was consistent with employer's attendance policy of which claimant was aware. The referee concluded that employer's attendance policy and other applicable rules were not unreasonable. The referee concluded further that claimant had not demonstrated good cause for her absence from work or for failing to provide medical documentation to employer.

■ Claimant then appealed to the board which affirmed the referee's decision. This appeal followed.[7]

## I. MOTION TO STRIKE

■ Initially, we will address the board's motion to strike claimant's reply brief to employer's amicus curiae brief. Originally, employer filed a notice of intervention with this court to which claimant objected based on timeliness.[8] As a result, employer with-

5. 43 P.S. § 802(b). Section 402(b) provides that a employee shall be ineligible for benefits for any week in which her unemployment is due to voluntarily leaving work without cause of a necessary and compelling nature.

6. 43 P.S. § 801(d)(1). Section 401(d)(1) provides that compensation shall be payable to an employee who is or becomes unemployed, and who is able to work and available for suitable work.

7. This court's scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa.Cmwlth. 92, 525 A.2d 841 (1987).

8. Pa.R.A.P. 1531(a) provides, in pertinent part, that:

 (a) **Notice of intervention.** A party to a proceeding before a government unit which resulted in a quasijudicial order may intervene as a right in a proceeding under this chapter relating to such order by filing a notice of intervention ... with the prothonotary of the appellate court within 30 days after notice of the filing of the petition for review.

drew its notice of intervention and indicated that it would submit a brief amicus curiae pursuant to Pa.R.A.P. 531.[9] Thereafter, by order of March 1, 1996, this court dismissed claimant's objection to employer's notice of intervention as moot and permitted employer to submit an amicus curiae brief pursuant to Pa.R.A.P. 531.

Employer filed its amicus curiae or "friend of the court" brief on April 17, 1996.[10] Claimant filed a reply brief to the amicus curiae brief on April 30, 1995. The board requests that this court strike claimant's reply brief because, *inter alia,* the reply brief violates Pa.R.A.P. 2113(a).

Rule 2113(a) provides that an appellant may file a brief in reply to matters raised by *appellee's* brief not previously raised in appellant's brief. Accordingly, the language of Rule 2113(a) plainly permits an appellant to file a reply brief in response to an appellee's brief. The rule clearly does not, however, permit an appellant to file a reply brief to an amicus curiae brief.

Rule 2113(d) also provides that "[n]o further briefs may be filed except with leave of court." Pa.R.A.P. 2113(d). We note that claimant did not seek leave from this court prior to filing her reply brief.

Accordingly, we grant the board's motion to strike claimant's reply brief to employer's amicus curiae brief as claimant's reply brief

9. Rule 531, governing participation by amicus curiae, provides in pertinent part, that "[a]nyone interested in the questions involved in any matter pending in an appellate court, excluding Petitions for Allowance of Appeal, although not a party, may, without applying for leave to do so, file a brief amicus curiae in regard to those questions." Pa. R.A.P. 531(a).

10. In its amicus curiae brief, employer argues that claimant was properly terminated for reasons constituting willful misconduct; therefore, the board's decision should be upheld.

11. Specifically, claimant questions whether:
 1. The finding of willful misconduct is supported by competent evidence.
 2. Claimant demonstrated a compelling and necessitous reason to leave her employment on June 16, 1995, in order to make appointments with her doctors.

is not permitted by the Pennsylvania Rules of Appellate Procedure.

## II. CLAIMANT'S APPEAL

### A. WAIVER

■ Preliminarily, we will address the board's arguments regarding claimant's waiver of the issues presented in her brief. On appeal, claimant raises the following issue in her statement of questions involved:

> When benefits are not denied under sections 402(b) and 401(d)(1) of the Law, can a claimant who gives written notice to the employer that she is unable to work and will be taking time off from work in order to see her two treating doctors be denied unemployment compensation benefits for willful misconduct under section 402(e) when terminated by employer eight days later and before the medical evaluations had been completed?

In support of this issue, claimant sets forth in the argument portion of her brief, eight separate questions relating to the board's decision denying claimant benefits.[11] The board contends that claimant has waived all issues except the one preserved in her statement of the question presented. In addition, the board contends that claimant has waived two of the issues raised in the argument portion of her brief by failing to preserve them in her petition for review.

3. Claimant should be disqualified from receiving benefits for willful misconduct for failing to attend a third employer-requested medical evaluation.
4. Claimant can have her benefits denied because she did not request a leave of absence or other suitable light-duty work.
5. Employer in this case actually had proper documentation to justify claimant's absence after June 16, 1995.
6. Claimant needed a note from her doctor to take time off from work in order to see her two treating doctors for her two prior-existing medical conditions.
7. Employer failed to follow its own company policies in terminating claimant.
8. Employer has proven willful misconduct so as to disqualify claimant from receiving benefits.

Pa.R.A.P. 2116 provides, in pertinent part, as follows:

> **(a) General Rule.** The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind.... This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.

A review of the issues or arguments raised in claimant's argument portion of her brief reveals that the points raised therein are suggested by the single issue stated in claimant's statement of question involved. Therefore, this court will not consider those arguments as having been waived based on Rule 2116.

Next, the board argues that claimant has waived two of the arguments or issues set forth in her brief by failing to preserve them in her petition for review.

Pursuant to Pa.R.A.P. 1513(a), a petition for review shall contain, *inter alia*, a general statement of the objections to the order or other determination appealed from. Further, the statement of objections will be deemed to include every subsidiary question fairly comprised therein. Pa.R.A.P. 1513(a).

■ In argument one, claimant questions whether the finding of willful misconduct is supported by competent evidence. The board contends that this issue has been waived since claimant stated in her petition for review that the board's *determination* is not supported by substantial evidence instead of stating that the board's *findings* are not supported by substantial evidence.

In order for the board to prevail in this contention, we would have to embrace the board's extremely strict interpretation of Rule 1513(a). This we cannot embrace as the rule plainly states that the statement of objections will be deemed to include every subsidiary question fairly comprised therein.

The objection that the board's findings are not supported by competent evidence is fairly comprised, in accordance with Pa.R.A.P. 1513(a), in the stated objection that the board's determination is not supported by competent evidence.

In argument seven, claimant questions whether employer failed to follow its own company policies in terminating claimant. The board contends that issue seven has been waived because claimant did not preserve it in her petition for review. We agree; therefore, this issue has been waived. *See Tyler v. Unemployment Compensation Board of Review,* 139 Pa.Cmwlth. 598, 591 A.2d 1164, 1168 (1991) ("[W]here a Claimant fails to include an issue in his petition for review, but addresses the issue in his brief, this court has declined to consider the issue, since it was not raised in the stated objections in the petition for review, nor 'fairly comprised therein in accordance with Pa. R.A.P. 1513(a)' ").

## B. MERITS

While claimant raises several points in her brief in support of her appeal, the main issue herein is whether the board erred in determining that claimant was ineligible for benefits pursuant to section 402(e) of the Law.

■ The burden of proving willful misconduct rests with the employer. *Brant v. Unemployment Compensation Board of Review,* 83 Pa.Cmwlth. 373, 477 A.2d 596 (1984). Willful misconduct has been judicially defined as that misconduct which must evidence the wanton and willful disregard of employer's interest, the deliberate violation of rules, the disregard of standards of behavior which an employer can rightfully expect from his employee, or negligence which manifests culpability, wrongful intent, evil design, or intentional substantial disregard for the employer's interest, or the employee's duties and obligations. *Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 351 A.2d 631 (1976).

■ Once a *prima facie* case of willful misconduct has been established, the burden

of proof then shifts to the claimant to demonstrate that her behavior did not constitute willful misconduct under the facts of the particular case. *Brady v. Unemployment Compensation Board of Review*, 115 Pa.Cmwlth. 221, 539 A.2d 936 (1988). Whether an employee's conduct constituted willful misconduct is a matter of law subject to this court's review. *Miller v. Unemployment Compensation Board of Review*, 45 Pa.Cmwlth. 539, 405 A.2d 1034 (1979).

■ A violation of employer's work rules and policies may constitute willful misconduct. *Frumento.* An employer must establish the existence of the rule and its violation. *Williams v. Unemployment Compensation Board of Review*, 141 Pa.Cmwlth. 667, 596 A.2d 1191 (1991). If the employer proves the existence of the rule, the reasonableness of the rule, and the fact of its violation, the burden of proof shifts to the claimant to prove that he had good cause for his action. *Id.*

■ In the present case, the board found that employer had an attendance policy based on a point system which requires termination where an employee's point level drops below one point unless proper documentation is provided to employer when a medical problem is involved. Finding of Fact No. 24. The board also found that employer offered a light-duty work program and leaves of absence in certain situations. Findings of Fact Nos. 17, 21. The board concluded that employer's attendance policy and other applicable rules were not unreasonable.

The board found that claimant was aware of employer's attendance policy, light-duty program, and the availability of leaves of absence. Findings of Fact Nos. 17, 20, 21. The board found further that claimant violated employer's attendance policy and concluded that claimant did so without good cause. *See* Finding of Fact No. 25.

The board found that on June 14, 1995, employer requested that claimant visit Dr. McGee for an evaluation of her medical problem and that claimant refused. Finding of Fact No. 9. Thereafter, claimant was absent from work beginning on June 15, 1995. Finding of Fact No. 10.

While claimant notified employer that her shoulder and arm problem was the cause of her June 15, 1995 absence, claimant provided employer with a letter on June 16, 1995 indicating that the working conditions were adversely affecting her medical problems and that she would not be returning to work until after she visited two physicians on June 20, 1995 and June 21, 1995. Finding of Fact No. 11. When claimant delivered the letter to employer, she was directed to stay at work and speak with management in the Human Resources Department but left employer's premises without meeting with human resources. Finding of Fact No. 13.

On June 19, 1995, employer notified claimant that she had been absent three days without medical excuse, that work was available within her restrictions and indicated that her continued absence from work without a medical excuse and without applying for a medical leave of absence could result in disciplinary action. Finding of Fact No. 14. Employer also notified claimant that she was scheduled to see employer's doctor on June 20, 1995 and claimant refused the appointment. Finding of Fact No. 15.

From June 16, 1995 to June 23, 1995, claimant was absent from work without any direct personal contact with employer. Finding of Fact No. 16. As of June 14, 1995, claimant only had 25 points remaining under employer's attendance program and was being charged 10 points for each day of absence from work. Findings of Fact Nos. 19, 24. Consequently, employer discharged claimant from employment due to her absence from work and failure to provide proper documentation indicating her absence was related to a medical problem. Finding of Fact No. 25.

A review of the record herein reveals that these findings are supported by substantial

evidence.[12] Moreover, these findings support the legal conclusion that claimant's conduct constituted willful misconduct. As stated above, a violation of an employer's policies and rules may constitute willful misconduct. *Frumento.*

 While an employee may overcome a determination of willful misconduct by proving that she had good cause for her actions, *Williams,* the board herein concluded that claimant did not have good cause for her absence from work. The board opined that claimant could have attended the doctors' appointments scheduled by employer and, as such, claimant did not demonstrate good cause for failing to provide medical documentation to employer.

Claimant argues, *inter alia,* that she had good cause for her actions because employer's attendance policy does not define "proper documentation" and that she had already provided sufficient documentation to show that her injury was work-related. Claimant points to the medical documentation from Dr. Zartman regarding her shoulder and arm problem and her June 16, 1995 letter.

 However, the medical documentation provided to employer by Dr. Zartman prior to June 16, 1995 related solely to claimant's shoulder and arm injury. *See* Findings of Fact Nos. 6, 7. Furthermore, as stated, claimant's June 16, 1995 letter to employer indicated that she was again experiencing other medical problems related to her lungs which required her to visit Dr. Kaufman, her treating physician for asthma problems. *See* Findings of Fact Nos. 11, 12. As found by the board, employer had previously accommodated claimant for these medical problems based on medical documentation by placing her in another department and providing work within claimant's medical restrictions.

*See* Findings of Fact Nos. 2, 3, 6, 7, 8. Therefore, under employer's attendance policy, employer reasonably requested that claimant provide proper documentation in the form of medical documentation after claimant was absent for three days beginning June 16, 1995 for continued medical problems without requesting a medical leave of absence. *See Mrasz v. Unemployment Compensation Board of Review,* 45 Pa.Cmwlth. 77, 404 A.2d 790, 792 (1979) (An employer may reasonably demand medical certification; "otherwise it would put the burden on the employer to evaluate every claim of inability to work because of medical reasons without the benefit of a professional medical opinion").

 Accordingly, the board's order is affirmed.[13]

### ORDER

AND NOW, this 17th day of July, 1996, it is hereby ordered:

1. That the motion to strike petitioner's reply brief is granted and petitioner's reply brief to the amicus curiae brief filed by employer Tyson Foods, Inc. is stricken; and

2. That the order of the Unemployment Compensation Board of Review, dated November 27, 1995, at No. B–343585, is affirmed.

---

**12.** Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985).

**13.** We point out to counsel for claimant that this court may not consider any evidence that is not part of the certified record on appeal. *Croft v. Unemployment Compensation Board of Review,* 662 A.2d 24 (Pa.Cmwlth.1995). Accordingly, we note that this court has not relied on any evidence not of record, as set forth in claimant's brief, in reviewing the board's order.